**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SACHIN SHAH,

                Plaintiff,

      -against-

LESTER L. LEVY,

                Defendant.

13-CV-02975 (LGS)(SN)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SANCTIONS**

The papers submitted by plaintiff in opposition to defendant's motions for sanctions against him are consistent with the approach he has taken throughout this litigation. Plaintiff has at no point taken seriously his obligation to put forth a truthful damages calculation.[1]

Defendant seeks sanctions because, among other things, plaintiff has given false verifications of interrogatories, disobeyed a court order, and has yet to provide anything other than a damages calculation that he has simply concocted to prolong this litigation.

Plaintiff's opposition highlights his bad faith and further justifies sanctions. In his opposition, plaintiff does not even submit a declaration challenging the falsity of his claimed damages calculations. Rather, plaintiff, through counsel, now admits that his damages calculations were "projected rather than actual" (Opp. at p. 3) and "circumstantial" (Opp. at p. 4), but fails to explain how that is consistent with his actual interrogatory response that his damages for "reduced business" were calculated by "using the run-rate for Plaintiff Shah's clients from Tullett Prebon and calculated the loss of commissions from the clients that were lost since Tullett Prebon and using the run-rate for Plaintiff Shah's clients from Tullett Prebon and calculated the loss of commissions from the clients less the current commissions collected since Tullett Prebon (reduced business)." (See Second Responses at Response No. 3)  Plaintiff's conduct warrants sanctions.

## I.    PLAINTIFF MISSTATES THE APPLICABLE LEGAL STANDARD

Plaintiff's main argument in opposition (Opp. at p. 6) incorrectly argues that interrogatory responses that are merely "misleading" are not sanctionable. Plaintiff's dubious argument is unsupported by any Second Circuit authority, and is, in fact, contrary to the law of

---

[1] Also submitted in reply is the reply declaration of Lawrence P. Eagel, dated November 23, 2015 ("Eagel Reply Dec.").

this Circuit.  As explained in *Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP*, 03 Civ. 5560, 2008 U.S. Dist. LEXIS 103287, at *31-33 (S.D.N.Y. Dec. 22, 2008):

> Courts in this Circuit have imposed all three types of sanctions available under Rule 37 upon parties who have provided misleading interrogatory responses. *See John B. Hull, Inc. v. Waterbury Petroleum Prod. Inc.*, *supra*, 845 F.2d at 1172 (dismissing plaintiff's claims for his failure to comply with three court orders instructing him to respond to defendant's interrogatories and discovery requests, seeking the factual basis and calculation for each element of plaintiff's damages); *Interscope Records v. Barbosa*, 05 CV 5864 (DGT)(RML), 2006 U.S. Dist. LEXIS 94210, 2007 WL 14332 at *1 (E.D.N.Y. Jan. 3, 2007) (imposing sanctions pursuant to Rule 37(c) for a pro se defendant's "false and misleading answers to plaintiffs' interrogatories, [which caused] plaintiffs to incur the unnecessary expense of taking depositions in order to obtain accurate information."); *Fears v. Wilhelmina Model Agency, Inc.*, 02 Civ. 4911 (HB)(HBP), 2004 U.S. Dist. LEXIS 8364, 2004 WL 1065543 at *7-*8 (S.D.N.Y. May 11, 2004) (sanctioning plaintiffs in the amount of $ 25,000.00 plus attorney's fees for serving inconsistent and "patently deficient" interrogatory responses); *Banco De Ponce v. Buxbaum*, 90 Civ. 6344 (SWK)(BAL), 1995 U.S. Dist. LEXIS 2692, 1995 WL 92324 at *5-*7 (S.D.N.Y. March 7, 1995) (sanctioning defendant under Rule 11 in the amount of plaintiff's legal fees for defendant's misleading interrogatory responses which vexatiously caused plaintiff to take the unnecessary deposition of a witness without any knowledge).

Furthermore, plaintiff's claim that bad faith is a prerequisite to sanctions is also incorrect. As also provided in *Kingsway* at *23, sanctions for discovery abuses may be appropriated even in the absence of a lack of willfulness or bad faith because these are factors that go to the severity of the sanction not prerequisites. *See also Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003) ("There are no specific requirements for the imposition of sanctions under Rule 37; rather, the decision is left to the sound discretion of the trial court.").  In all events, as set forth in defendant's moving papers (at p. 9), plaintiff's conduct here is sufficient to trigger an inference of bad faith and warrant the sanctions requested.

Moreover, even if the claims in plaintiff's opposition were credible – which they are not – no explanation is provided regarding why plaintiff did not comply with his affirmative

obligation to supplement his discovery response under Rule 26(e) when he became aware the information was misleading or incorrect. *See Lujan v. Cabana Mgmt.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) ("A party found to have violated its Rule 26 obligations is subject to sanctions under Rule 37."). Nor, does plaintiff even attempt to claim that his conduct falls within the substantial justification safe harbor of Rule 26(g)(3).

Plaintiff's opposition provides no basis to avoid sanctions.

## II. PLAINTIFF'S INTERROGATORY RESPONSES ARE FALSE

Plaintiff now concedes (Opp. at p. 3) that in many instances he "used a projected rather than actual, commission run rate to compute damages." Plaintiff's current damages incantation cannot be reconciled with his sworn statement in the Second Responses that his "reduced business" damages were determined by "using the run-rate for Plaintiff Shah's clients from Tullett Prebon." Plaintiff unquestionably represented that his damages were calculated by using actual run rates – a representation he is now attempting to flee from. Furthermore, it is understood that a run rate is based upon <u>actual</u> performance.[2]

Plaintiff, who has worked in the financial industry for many years, must be well aware of the standard definition of "run rate," and presumably was trying use this term to add false-credibility to lost business damages calculations. Plaintiff first swore that his lost business damages figures in the Second Responses were based upon his actual Tullett run rates and now

---

[2] According to investopedia.com, a "run rate" is, "[h]ow the financial performance of a company would look if you were to extrapolate **current results** out over a certain period of time." *See* http://www.investopedia.com/terms/r/runrate.asp (emphasis added); *see also* http://financial-dictionary.thefreedictionary.com/Run+Rate (Defining "run rate" as "[t]he estimation of future financial data that assumes **present trends** continue." (emphasis added)); http://www.isixsigma.com/dictionary/run-rate/ (Defining "run rate" as "[e]xtrapolating **current or known performance** to predict future performance over a period of time." (emphasis added)).

3

claims that they are based on "projected, rather than actual, commission run rates." Plaintiff's current naked assertion that a "run rate" can be based upon such speculation is false and contrary to his sworn interrogatory responses. Plaintiff's interrogatory responses are false.

In addition, defendant's moving papers (at pp. 2-6) set forth in great detail specific instances of the falsity of plaintiff's lost business damages claim. Contrary to plaintiff's claim that he lacked "bad faith" or "willfulness" (Opp. at pp. 6-7), a review of plaintiff's lost business damages claim as a whole demonstrates how disingenuous plaintiff's conduct was. The Second Responses show total monthly commissions of $98,604, which would translate to $1,183,248 in annual commissions. This claim is demonstrably false because in 2012 plaintiff's salary was reduced due to plaintiff's poor performance at Tullett. While at Tullett plaintiff's salary was subject to a 2:1 salary production requirement.[3] (Bovitz Tr. 35:10-38:13) In December 2012, because plaintiff did not meet his 2:1 production requirement, his salary at Tullett was reduce from $200,000 to $130,532. (See Bovitz Tr. pp. 58-65 a copy of which is contained in Eagel Reply Dec. Ex. A; see also Eagel Reply Dec. Ex. B) Thus, plaintiff was well aware that his claimed loss of business damages were a fantasy, but nonetheless he attested to their accuracy anyway. This can only be viewed as willful misconduct.

## III.  DEFENDANT HAS SUFFERED PREJUDICE

After plaintiff repeatedly refused to verify his interrogatory responses and refused to identify the 67 clients by name—making it impossible for defendant to test the accuracy of plaintiff's unverified damages claims—this Court ordered him to do both, as well as to "file *proper* responses and objections to all outstanding discovery requests." *See* February 13, 2015

---

[3] 2:1 salary production requirement means that plaintiff had to earn double his $200,000 salary for Tullett to maintain his salary at its current level. (Bovitz Tr. 35:10-38:13)

Order [see Dkt. No. 135] (emphasis added).[4] On February 27, 2015, pursuant to the Court's Order, plaintiff finally verified his discovery submission and revealed the identities of his 67 clients.

Defendant engaged in significant discovery to test plaintiff's damages claims, including deposing plaintiff and issuing subpoenas to a sample of the 67 alleged clients. As detailed in defendant's opening papers in support of his motion for sanctions and the exhibits thereto, the discovery defendant undertook has revealed that a significant portion of plaintiff's interrogatory answers are demonstrably false.

Defendant brought this motion reluctantly and only after affording plaintiff every opportunity to correct his damages claim or resolve this dispute through the meet and confer process. During the lengthy process to uncover the truth about plaintiff's damages claims, plaintiff ultimately chose not to amend or correct his damages claim. These numerous opportunities include: (i) when defendant requested and then moved to have plaintiff reveal the identities of the 67 clients and verify the accuracy of his discovery submission; (ii) when this Court ordered plaintiff to submit <u>proper</u>, verified discovery responses and reveal his clients' identities; (iii) when plaintiff was confronted with the evidence demonstrating the falsity of his discovery submissions at his deposition and conceded as much; (iv) when defendant informed plaintiff's counsel, and then this Court on September 18, 2015, that he was contemplating moving for sanctions; (v) when defendant conferred with plaintiff's counsel prior to making the

---

[4] While plaintiff's conduct has caused prejudice to defendant, prejudice is not a prerequisite to sanctions. *See Metro. Opera Ass'n*, 212 F.R.D. at 229 ('[T]he Union's assertion that the Met must show prejudice before a sanction may be ordered under Rule 37 is without merit.").

5

instant motion[5]; and (vi) when plaintiff reviewed defendant's motion for sanctions and supporting papers and submitted his opposition thereto.

    Plaintiff's actions have costs defendant substantial time and resources in responding to a damages claim that plaintiff knew was baseless.  If a party were able to serve false answers under oath repeatedly and was not sanctioned by the court for that conduct, it would send a bad signal to the bar as to what discovery conduct a party could get away with.

## CONCLUSION

    Defendant's request to sanction plaintiff should be granted.

Dated: November 23, 2015

                                          Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, PC**

/s/ Lawrence P. Eagel
Lawrence P. Eagel
Justin Kuehn
885 Third Avenue, Suite 3040
New York, NY  10022
(212) 308-5858

            -and-

**WOLF POPPER, LLP**

 /s/ Lester L. Levy, Sr.
Lester L. Levy, Sr.
845 Third Avenue, 12th Floor
New York, NY 10022
Tel: (212) 759-4600

*Attorneys for Defendant*

---

[5] Plaintiff argues that defendant was late in filing his motion for sanctions, yet plaintiff *knew in advance* that this motion was coming if he did not correct his false discovery responses, and also knows that defendant made multiple attempts to avoid having to make the motion.  These attempts delayed the filing.

6