**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
SACHIN SHAH,                                      :
                                                  :
                          Plaintiff,              :
                                                  :          No. 1:13-cv-02975-LGS-SN
             -against-                            :
                                                  :
LESTER L. LEVY,                                   :
                                                  :
                          Defendant.              :
------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.      STANDARDS ON A MOTION FOR SUMMARY JUDGMENT.................................. 4

II.     SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF'S CLAIM FOR
        TORTIOUS    INTERFERENCE    WITH    CONTRACT    BECAUSE    THE
        ADMISSIBLE  EVIDENCE  ESTABLISHES  THAT  PLAINTIFF'S  OWN
        CONDUCT – NOT THE EMAILS – CAUSED HIS EMPLOYERS (TULLETT
        AND CUTTONE) TO TERMINATE HIM....................................................................... 5

III.    SUMMARY  JUDGMENT  IS  ALSO  WARRANTED  AS  TO  PLAINTIFF'S
        CLAIM FOR DEFAMATION ........................................................................................ 10

                1.      Plaintiff Has No Admissible Evidence of Special Damages .................... 11

                2.      Plaintiff Has No Admissible Evidence of General Damages .................. 13

                3.      If Not Dismissed, Defamation Damages Should Be Limited to a
                        Nominal Amount .................................................................................... 17

IV.     PLAINTIFF HAS USED, AND SEEKS TO USE, THIS ACTION AS A WAY TO
        STRIKE AT HIS PERCEIVED ENEMIES .................................................................. 18

CONCLUSION..................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Allen v. CH Energy Group, Inc.*,
   872 N.Y.S.2d 239 (N.Y. App. Div. 2009) ........................................................... 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).......................................................................................... 4, 5

*Aronson v. Wiersma*,
   483 N.E.2d 1138 (N.Y. 1985)................................................................................ 12

*Balderman v. Am. Broad. Co., Inc.*,
   738 N.Y.S.2d 462  (N.Y. App. Div. 2002) ........................................................... 10

*Brink v. Union Carbide Corp*.,
   No. 99-7303, 2000 U.S. App. LEXIS 7150 (2d Cir. Apr. 18, 2000)....................... 5

*Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am., Inc.*,
   749 N.Y.S.2d 249 (N.Y. App. Div. 2002) ...................................................... 5, 6, 8

*Celle v. Filipino Reporter Enters., Inc.*,
   209 F.3d 163 (2d Cir. 2000) ................................................................................. 11

*Chamilia, LLC v. Pandora Jewelry, LLC*,
   No. 04-CV-6017 (KMK), 2007 U.S. Dist. LEXIS 71246 (S.D.N.Y. Sept. 24, 2007) .... 12, 13

*Cottrell v. Berkshire Hathaway, Inc.*,
   798 N.Y.S.2d 846 (N.Y. Sup. Ct. 2004).............................................................. 10

*County of Orange v. Sullivan Highway Prods., Inc.*,
   752 F. Supp. 643 (S.D.N.Y. 1990) ......................................................................... 9

*Crawford-El v. Britton*,
   523 U.S. 574 (1998)............................................................................................... 4

*Cummins v. Suntrust Capital Mkts., Inc.*,
   649 F. Supp. 2d 224 (S.D.N.Y. 2009) .................................................................. 12

*Desia v. GE Life & Annuity Assurance Co*.,
   350 Fed. Appx. 542 (2d Cir. 2009)......................................................................... 9

*Dillon v. City of New York*,
   704 N.Y.S.2d 1  (N.Y. App. Div. 1999) ............................................................... 11

*Dongguk Univ. v. Yale Univ.*,
   No. 08-cv-0441 (TLM), 2012 U.S. Dist. LEXIS 17085 (D. Conn. Feb. 10, 2012).............. 11

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002) ..................................................................... 13, 14

*Fernandez v. China Ocean Shipping Co.*,
  312 F. Supp. 2d 369 (E.D.N.Y. 2003), *aff'd by* 94 Fed. Appx. 866 (2d Cir. 2004) .............. 9

*Goenaga v. March of Dimes Birth Defects Found.*,
  51 F.3d 14 (2d Cir. 1995) ............................................................................ 4

*Gottlieb v. County of Orange*,
  84 F.3d 511 (2d Cir. 1996) ........................................................................... 4

*Heredia v. Taylor*,
  300237/05, 2009 N.Y. Misc. LEXIS 2353 (N.Y. Civ. Ct. Mar. 6, 2009) ..................... 16, 17

*Immuno AG v. Moor-Jankowski*,
  567 N.E.2d 1270 (N.Y. 1991) ....................................................................... 10

*Johnson v. Cambridge Indus., Inc.*,
  325 F.3d 892 (7th Cir. 2003) ......................................................................... 4

*Khan v. N.Y. Times Co., Inc.*,
  710 N.Y.S.2d 41 (N.Y. App. Div. 2000) ........................................................ 10

*Knight v. U.S. Fire Ins. Co.*,
  804 F.2d 9 (2d Cir. 1986) ............................................................................. 5

*Lightfoot v. Union Carbide Corp.*,
  110 F.3d 898 (2d Cir. 1997) ........................................................................ 10

*MapInfo Corp. v. Spatial Re-Eng'g Consultants*,
  No. 02-CV-1008 (DRH), 2006 U.S. Dist. LEXIS 70408 (N.D.N.Y. Sept. 28, 2006).......... 17

*Massre v. Bibiyan*,
  12 Civ. 6615 (KPF), 2014 U.S. Dist. LEXIS 82444 (S.D.N.Y. June 16, 2014)........ 13, 15, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).................................................................................... 4

*McCullough v. Wyandanch Union Free Sch. Dist.*,
  187 F.3d 272 (2d Cir. 1999) .......................................................................... 9

*Meehan v. Snow*,
  494 F. Supp. 690 (S.D.N.Y. 1980) ............................................................ 12, 16

*Metito (Overseas) Ltd. v. Gen. Elec. Co.*,
  05 Civ. 9478 (GEL), 2009 U.S. Dist. LEXIS 12590 (S.D.N.Y. Feb. 18, 2009) .......... passim

*Orlowski v. Koroleski*,
   651 N.Y.S.2d 137 (N.Y. App. Div. 1996) ........................................................... 18

*Patton v. Egan*, 12 Civ. 2500 (LGS),
   2014 U.S. Dist. LEXIS 132098 (S.D.N.Y. Sept. 18, 2014)................................... 17

*Planet Payment, Inc. v. Nova Info. Sys.*,
   07-cv-2520, 2011 U.S. Dist. LEXIS 49154 (E.D.N.Y. Mar. 31, 2011) ........................ 5, 6, 8

*Rosenberg v. Metlife, Inc.*,
   866 N.E.2d 439 (N.Y. 2007)................................................................................. 6

*Sharma v. Skaarup Ship Mgmt. Corp.*,
   916 F.2d 820 (2d Cir. 1990) ................................................................................ 5

*Suckenik v. Levitt*,
   576 N.Y.S.2d 258 (N.Y. App. Div. 1991) ......................................................... 12

*Thai v. Cayre Group, Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010) ................................................................ 11

*Util. Metal Research, Inc. v. Coleman*,
   03 CV 1463 (SLT)(SMG), 2008 U.S. Dist. LEXIS 25095 (E.D.N.Y. Mar. 28, 2008) ........... 4

*White Plains Coat & Apron Co. v. Cintas Corp.*,
   867 N.E.2d 381 (N.Y. 2007)................................................................................. 6

*Wolf St. Supermarkets, Inc. v. McPartland*,
   487 N.Y.S.2d 442 (App. Div. 1985)............................................................ 11, 12, 13

## Other Authorities

New York Pattern Jury Instructions – Civil, PJI 3:29B (2014) ................................... 12

Restatement 2d of Torts, § 622A, *comments a.-b.*........................................................ 12

## PRELIMINARY STATEMENT

Defendant is moving for summary judgment on Plaintiff's remaining claims of tortious interference with contract and defamation.

Plaintiff's claim for tortious interference with contract requires that Plaintiff establish that Defendant was the cause of a breach of contract. The evidence demonstrates he was not. As to the defamation claim, Defendant's conduct, while admittedly unbecoming (as was Plaintiff's), has not been shown by Plaintiff to warrant legal compensation. The evidence shows that Plaintiff did not incur damages as a result of Defendant's statements, and that Plaintiff acted with unclean hands and amply provoked Defendant.

Unfortunately for all involved, this is a case of grownups behaving badly and childlike: trying to "tell on" each other and get each other "into trouble" which at their age involved seeking out bosses and governing agencies. The conduct at issue does not belong in a court of law, but rather a playground or a high school detention room. The conduct complained of did not cause Plaintiff to lose any job nor suffer any other harm. Ironically, and while Defendant did not run to court, or even counterclaim, he has suffered more than Plaintiff in this tattletale game.

## PROCEDURAL HISTORY

Plaintiff's complaint, filed in May 2013, alleges claims for tortious interference with contract, defamation, tortious interference with prospective economic advantage and malicious prosecution. By order dated December 3, 2013, this Court dismissed Plaintiff's claims for tortious interference with prospective economic advantage and malicious prosecution, and dismissed any claim based upon alleged defamatory statements made prior to May 1, 2012.

On January 15, 2016, Magistrate Judge Netburn determined that Plaintiff had given willfully false and misleading responses to Defendant's interrogatories. The Court ordered that Plaintiff had to forgo his damage claim based on lost client commissions and that this "strong

medicine" was warranted in light of the egregiousness of Plaintiff's misconduct.  Further, the Court directed Plaintiff to pay Defendant's fees and costs up to $10,000.

## STATEMENT OF FACTS[1]

In 2007-2009, Plaintiff and Defendant were employed at the brokerage firm, ICAP.  During this time, Plaintiff continually complained about his compensation and how (he perceived) he was being treated by his co-employees and supervisors.  He accused his supervisors and his co-workers of, *inter alia*; secretly meeting without him, plagiarism, assaulting him, slander and being childish.  (Rule 56.1 Statement ¶¶ 1, 2, 3.)  He accused his supervisor of doing personal business on ICAP time.  He accused Defendant of doing pro bono legal work for his fellow ICAP employees.  He believed that everyone was hostile towards him, including his team, other sales people, even I.T. personnel.  He believed he was being followed and felt deeply unappreciated.  (R. 56.1 Statement ¶¶ 1, 2, 3.)

Plaintiff constantly complained to ICAP's management that his supervisor and Defendant were violating securities laws and regulations.  (R. 56.1 Statement ¶¶ 1, 2, 3.)  When ICAP's management found no basis for such allegations, Plaintiff contacted the F.B.I. in a vain attempt to have criminal charges brought against his supervisor and Defendant.  (R. 56.1 Statement ¶¶ 4, 5.)

In 2009, ICAP notified Plaintiff that his employment contract would not be renewed and that he need not bother reporting to work the last few months of his contract (R. 56.1 Statement ¶ 6, 7).  Plaintiff thereupon contacted the SEC and FINRA, and accused his supervisor, Defendant and other co-workers of misconduct.  (Complaint ¶¶ 56, 57.)[2]

---

[1] Defendant refers the Court to the accompanying Rule 56.1 Statement of Undisputed Facts for a more complete rendition.

[2] All references to the Complaint are to the Corrected Amended Complaint.

Subsequent to his departure from ICAP, Plaintiff was employed by Tullett Prebon ("Tullett").  His employment contract, dated August 3, 2011, required that Plaintiff produce revenue at least two times his base salary in order to maintain that salary.  (R. 56.1 Statement ¶¶ 10, 11, 12, 19.)  He failed to do so.  Accordingly, his salary was reduced in December 2012.  (R. 56.1 Statement ¶¶ 19, 20.)  After learning of his salary reduction, Plaintiff refused to perform certain of his job responsibilities.  Thereupon, Plaintiff was terminated for "Failure to Meet Company Performance Standards" and "for cause."  (R. 56.1 Statement ¶¶ 21-25.)

Subsequently, Plaintiff was employed by Cuttone & Co. ("Cuttone").  Plaintiff was employed by Cuttone for approximately one month when he was terminated for "fail[ure] to disclose complete information during the hiring process" related to his undisclosed contacts with FINRA.  (R. 56.1 Statement ¶¶ 29-32.)

Plaintiff alleges that he lost his jobs at Tullett and at Cuttone by reason of emails sent to those employers by Defendant.  The emails are alleged, *inter alia*, to say that Plaintiff:  had been fired from almost all his prior positions, has a history of complaining to FINRA about activities taking place where he is employed, has filed untrue U-4 statements, and has violated FINRA regulations.  Notably, Tullett received emails disparaging Plaintiff before it entered into the employment contract on August 3, 2011, didn't believe them, and hired Plaintiff.  After August 3, 2011, Tullett received additional emails from Defendant criticizing Plaintiff.  Plaintiff's supervisor at Tullett has testified that he did not believe the emails, and continued to employ Plaintiff until he refused to perform his services.  (R. 56.1 Statement ¶¶ 13-25.)  Cuttone has informed FINRA that the sole reason Plaintiff was fired was for lack of candor in the hiring process.  The contemporaneous documents bear that out.  (R. 56.1 Statement ¶¶ 29-32.)

Shortly after leaving Cuttone, Plaintiff was hired by Albert Fried & Co. ("Albert Fried"). Anthony Katsingris ("Katsingris") of Albert Fried testified that he hired Plaintiff after reading the emails.  (R. 56.1 Statement ¶ 34.)

## ARGUMENT

## I.   STANDARDS ON A MOTION FOR SUMMARY JUDGMENT

"'[S]ummary judgment 'is the put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'"  *Util. Metal Research, Inc. v. Coleman*, 03 CV 1463 (SLT)(SMG), 2008 U.S. Dist. LEXIS 25095, at *16 (E.D.N.Y. Mar. 28, 2008) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)).  "In moving for summary judgment against a party who will bear the ultimate proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  If such a showing is made, "any factual dispute with respect to other elements [of the nonmoving party's claim] becomes immaterial and cannot defeat the motion."  *Gottlieb v. County of Orange*, 84 F.3d 511, 519 (2d Cir. 1996).

Once the requisite showing is made, the burden then shifts to the nonmovant to "affirmatively present contrary evidence" sufficient to create a genuine issue of material fact.  *Metito (Overseas) Ltd. v. Gen. Elec. Co.*, 05 Civ. 9478 (GEL), 2009 U.S. Dist. LEXIS 12590, at *25 n.7 (S.D.N.Y. Feb. 18, 2009) (Lynch, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)).  The nonmovant cannot satisfy this burden merely by making "general attacks upon the credibility" of the movant or his witnesses, *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); by arguing that "a jury might, and legally could, [conceivably choose to] disbelieve" the movant's evidence at trial, *Anderson*, 477 U.S. at 256; by raising "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986);

4

or by "suggesti[ng] that admissible evidence might be found in the future," *Metito (Overseas) Ltd.*, 2009 U.S. Dist. LEXIS 12590, at *20 (internal quotation marks omitted).

Rather, the nonmovant must offer "concrete evidence from which a reasonable jury could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256. Such evidence cannot be based on "mere speculation or conjecture as to the true nature of the facts[.]" *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will [also] be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The nonmovant's evidence must also be admissible. *Brink v. Union Carbide Corp.*, No. 99-7303, 2000 U.S. App. LEXIS 7150, at *4 (2d Cir. Apr. 18, 2000) ("[T]he evidence proffered by the party opposing summary judgment must be of a type that would be admissible at trial.").

## II.   SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT BECAUSE THE ADMISSIBLE EVIDENCE ESTABLISHES THAT PLAINTIFF'S OWN CONDUCT – NOT THE EMAILS – CAUSED HIS EMPLOYERS (TULLETT AND CUTTONE) TO TERMINATE HIM

"[A] claim of tortious interference with contract requires that 'but for' the conduct of the defendant, there would not have been a breach." *Planet Payment, Inc. v. Nova Info. Sys.*, 07-cv-2520, 2011 U.S. Dist. LEXIS 49154, at *31-32 (E.D.N.Y. Mar. 31, 2011) (Amon, J.) (citing *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990)); *Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am., Inc.*, 749 N.Y.S.2d 249, 249 (N.Y. App. Div. 2002) ("An essential element of [a tortious interference with contract] claim is that the breach of contract would not have occurred but for the activities of the defendant"). As Judge Lynch stated in *Metito (Overseas) Ltd.*, a plaintiff must "establish proximate causation." 2009 U.S. Dist. LEXIS 12590 at *20.

To defeat summary judgment, a plaintiff must present admissible evidence showing that the defendant "induc[ed] or otherwise caus[ed]" the breach. *White Plains Coat & Apron Co. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007). For example, in *Planet Payment*, *supra*, Judge Amon granted the defendant's summary judgment motion where the plaintiff failed to produce evidence showing that the defendant "caused" or "procured" the alleged breach. 2011 U.S. Dist. LEXIS 49154 at *33, *35-40; *see also Cantor Fitzgerald Assocs., L.P.*, 749 N.Y.S.2d at 249 (affirming lower court's grant of defendant's motion for summary judgment where the plaintiff "did not satisfy [its] burden of establishing proximate causation"); *Metito (Overseas) Ltd.*, 2009 U.S. Dist. LEXIS 12590 at *20-28 (granting defendant's motion for summary judgment where the defendant's evidence established that it did "not induce[] . . . [or] proximate[ly] cause" the breach, and the plaintiff was unable to produce admissible evidence to rebut the lack of inducement).

Here, as in the cases cited above, the admissible evidence shows that Defendant did not cause Plaintiff's termination from Tullett or Cuttone. Tullett stated in its Form U-5 that it terminated Plaintiff because he "fail[ed] to meet company performance standards."[3] This fact was corroborated by the deposition testimony of Plaintiff's supervisor at Tullett, Thomas Bovitz, who explained that Plaintiff's employment contract with Tullett required Plaintiff to produce twice as much revenue as his salary in order to maintain his salary level. However, after giving Plaintiff an extended period of time to do so, Plaintiff failed to produce the necessary revenue and, as a

---

[3] Statements made in a U-5 are independently entitled to deference. *See Rosenberg v. Metlife, Inc.*, 866 N.E.2d 439, 444 (N.Y. 2007) ("The Form U-5 plays a significant role in [FINRA's] self-regulatory process. Filing is mandatory within 30 days of termination of the registered representative and firms are subject to penalties should they fail to comply." "Accurate and forthright responses on the Form U-5 are critical to achieving [FINRA's] objectives. The Form U-5's compulsory nature and its role in [FINRA's] quasi-judicial process, together with the protection of public interests, lead us to conclude that statements made by an employer on the form should be subject to an absolute privilege.").

result, Mr. Bovitz, in his discretion, and in accordance with the employment contract, reduced Plaintiff's salary from $200,000 to $130,000.  (R. 56.1 Statement ¶¶ 19-20.)  Mr. Bovitz testified that this decision was based solely on the revenue numbers.  (R. 56.1 Statement ¶ 20.)  After Plaintiff was informed of the salary reduction, he took various Tullet clients off of his distribution list and told them that he would no longer send them his market commentary.  (R. 56.1 Statement ¶ 21.)  Plaintiff's refusal to continue to perform this aspect of his job upset other Tullett employees, including Mr. Bovitz.  As a consequence, Mr. Bovitz terminated Plaintiff for cause on December 16, 2012.  (R. 56.1 Statement ¶¶ 22-23.)[4]

Mr. Bovitz also testified that he received the subject emails criticizing Plaintiff, and that he did not believe them to be true and they did not cause him to change his opinion of Plaintiff. (R. 56.1 Statement ¶¶ 13-17.)  Indeed, Plaintiff's employment contract at Tullett was entered into on August 3, 2011, which was *after* Tullett began receiving emails about him, in July 2011. Plaintiff also continued working at Tullett after additional emails were received.  Mr. Bovitz stated that Tullett's compliance department looked into the emails and did not find anything to them.  (R. 56.1 Statement ¶ 18.)

Plaintiff's next employer, Cuttone, stated in its Form U-5 that it terminated Plaintiff because he "failed to disclose complete information during the hiring process."  (R. 56.1 Statement ¶¶ 28-29.)  This fact was corroborated in a letter Cuttone's law firm, Kelly Drye & Warren, wrote to FINRA confirming the reason for the termination.[5]  (R. 56.1 Statement ¶ 30.)  It is also

---

[4] In his employment application with his next employer, Cuttone, Plaintiff misleadingly stated that he left Tullett over an issue as to his "compensation."  (R. 56.1 Statement ¶ 26.)

[5] The letter states the reason as:  "Mr. Shah did not disclose to the Firm during the hiring process that he was in contact with FINRA regarding allegations apparently made by a former colleague of his about conduct occurring at a prior firm.  The Firm considers all information important in its evaluation of prospective employees, including pending communications with regulators which involve allegations of improper or illegal conduct whether well founded, contested, or not."  The

confirmed by Plaintiff's own deposition testimony, admitting that Roger Barra, who signed the Cuttone Form U-5, was being truthful when he verified the accuracy and completeness of the information therein, including the reason for Plaintiff's termination.  (R. 56.1 Statement ¶ 29.)  The lack of candor cause for Plaintiff's termination is further confirmed in a contemporaneous email Plaintiff sent to his attorney, wherein he stated that his supervisors at Cuttone told him that, because Plaintiff had willfully held back information from them that should have disclosed during the hiring process, they could not trust him.  (R. 56.1 Statement ¶ 27.)

The evidence demonstrates that the emails did not cause Plaintiff's terminations.  Nevertheless, in an attempt to blame Defendant for his work woes, Plaintiff will likely point to a childish email Defendant sent only to Plaintiff taunting him with the claim that he "got [Plaintiff] fired" from Cuttone.  However, this was clearly an empty boast by someone who had, at the time the email was sent, no knowledge of why Cuttone fired Plaintiff.  This boast is akin to someone performing a rain dance, then claiming that he was responsible for causing any rain that occurred thereafter.

The fact that Defendant was apparently pleased with Plaintiff's termination is not evidence of causation.  *See Planet Payment, Inc.*, 2011 U.S. Dist. LEXIS 49154 at *35 ("Where a defendant merely welcomes a proposed breach, there is no liability."); *Cantor Fitzgerald Assocs., L.P.*, 749 N.Y.S.2d at 249 ("The fact that defendant welcomed the breach[] . . . did not satisfy plaintiff's burden of establishing proximate causation.").

Plaintiff has argued that there are issues of material fact as to causation because a jury might choose not to believe Plaintiff's former employers.  However, as noted above, this is not

---

letter went on to state that Cuttone did not find that Plaintiff did anything improper, except the failure to notify Cuttone during the hiring process that he was in contact with FINRA.

sufficient to defeat summary judgment.  Plaintiff has provided no support for his hope that a jury might find that Plaintiff's employers were not telling the truth about their reasons for firing him.

As Judge Lynch explained in *Metito (Overseas) Ltd.*, a plaintiff's "attack on [a witness's] testimony is not a substitute for [his] obligation to affirmatively present contrary evidence" at summary judgment.  2009 U.S. Dist. LEXIS 12590, at *25 n.7 (granting summary judgment after finding that plaintiff's "desperate attempt to create a disputed issue" by attacking the witness is "unavailing" and "legally inadequate to create a triable issue").[6]  This is especially true where, as here, "the party raising the issue of credibility failed to take the deposition of those individuals whose credibility was attacked."  *County of Orange v. Sullivan Highway Prods., Inc.*, 752 F. Supp. 643, 647 n.7 (S.D.N.Y. 1990).  In the instant case, despite having the burden of proof at trial, Plaintiff chose not to depose his former employer (Cuttone) to support his claim that Cuttone's statements to FINRA were dishonest.

Plaintiff has also previously argued that a jury "could infer" causation from the mere fact that at some time after Plaintiff's former employers received the emails, they fired him.  *See* Pls. Feb. 5, 2016 Pre-motion Letter (ECF No. 204), at 2.  However, as the Second Circuit has explained, temporal proximity is not evidence of causation; the fallacy of *post hoc ergo propter hoc*—after this, therefore because of this—is not the law.  *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898,

---

[6] *See, e.g., Desia v. GE Life & Annuity Assurance Co*., 350 Fed. Appx. 542, 544 (2d Cir. 2009) ("[B]road, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact for trial.") (internal quotation marks omitted); *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (a plaintiff "cannot defeat summary judgment . . . merely by impugning [a witness's] honesty" and "promising . . . that at trial he will demonstrate[]" how the witness's testimony is false); *Fernandez v. China Ocean Shipping Co*., 312 F. Supp. 2d 369, 378 (E.D.N.Y. 2003) ("Merely to assert that [a] witness[] may be lying, without any evidence to contradict the witnesses' testimony cannot defeat a motion for summary judgment.  If the most that can be hoped for is the discrediting of defendants' denials at trial no question of material facts is presented.") (internal quotation marks and internal citations omitted), *aff'd by* 94 Fed. Appx. 866 (2d Cir. 2004).

906 (2d Cir. 1997) (affirming grant of summary judgment and rejecting argument that the proximity of the plaintiff's termination to the imminent accrual of his retirement benefits created a genuine issue of fact as to whether the termination was improperly *caused* by the employer's desire to deprive the plaintiff of his benefits).

Defendant has satisfied his burden at summary judgment of demonstrating via admissible evidence the lack of proximate causation, including, *inter alia*: Tullett and Cuttone's Form U-5s; Mr. Bovitz's sworn testimony as to the reason for Plaintiff's termination from Tullett; contemporaneous documents showing that Tullett employees were upset by Plaintiff's refusal to perform his services; Plaintiff's admission that the Cuttone Form U-5 was complete and accurate; the Kelly Drye letter to FINRA confirming Cuttone's reason for terminating Plaintiff; and Plaintiff's contemporaneous letter to his attorney describing why he was fired from Cuttone.

On the other hand, Plaintiff has failed to satisfy his burden of affirmatively presenting concrete, admissible evidence from which a jury could find that Defendant's actions caused Plaintiff's work woes. Plaintiff's claim for tortious interference with contract should be dismissed.

## III. SUMMARY JUDGMENT IS ALSO WARRANTED AS TO PLAINTIFF'S CLAIM FOR DEFAMATION

The elements of a defamation claim under New York law[7] are (1) the making of a statement that is defamatory, meaning it has a tendency to expose the plaintiff to public hatred, contempt,

---

[7] There is substantial case law setting forth the proposition that, in New York, summary judgment is particularly appropriate in defamation cases. *Cottrell v. Berkshire Hathaway, Inc.*, 798 N.Y.S.2d 846, 849 (N.Y. Sup. Ct. 2004) (granting summary judgment for defendants on defamation claim); *see Balderman v. Am. Broad. Co., Inc.*, 738 N.Y.S.2d 462, 466 (N.Y. App. Div. 2002) (in defamation action, holding that "summary judgment is particularly appropriate here."); *Khan v. N.Y. Times Co., Inc.*, 710 N.Y.S.2d 41, 44 (N.Y. App. Div. 2000) ("Contrary to plaintiff-respondent's argument that the usual summary judgment rules are applicable, summary judgment is particularly favored by New York courts in libel cases[.]"); *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1282 (N.Y. 1991) ("[W]e reaffirm our regard for the particular value of summary judgment, where appropriate, in libel cases[.]").

ridicule or disgrace; (2) that conveys facts, not opinions, about the plaintiff, which are false; (3) that is published by the defendant to someone other than the plaintiff; and (4) that is either a substantial factor in causing the plaintiff to suffer financial loss (i.e., special harm), or is defamatory *per se*. *See, e.g., Celle v. Filipino Reporter Enters., Inc.,* 209 F.3d 163, 176 (2d Cir. 2000); *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999).

### 1.     Plaintiff Has No Admissible Evidence of Special Damages

Special damages are defined as "the loss of something having economic or pecuniary value such as loss of profits[.]" *Wolf St. Supermarkets, Inc. v. McPartland*, 487 N.Y.S.2d 442, 448 (App. Div. 1985). Plaintiff cannot recover the alleged loss of commissions and client business, as Magistrate Judge Netburn sanctioned Plaintiff for fabricating those damages and precluded him from seeking recovery thereon. *See* ECF No. 202.

Plaintiff's remaining claim for special damages is based on alleged lost base salary during his brief time unemployed after Tullett and Cuttone, during which he collected unemployment benefits. However, Plaintiff has never quantified the amount he is claiming during this time. As such, Plaintiff may not recover these claimed special damages. *See Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) ("Special damages must be fully and accurately stated, with sufficient particularity to identify actual losses. [R]ound figures or a general allegation of a dollar amount . . . will not suffice. The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity.") (internal quotation marks and citations omitted).

Even if Plaintiff were able to articulate any remaining special damages with sufficient accuracy, he could not recover them because he has failed to present any evidence that such damages were *caused* by Defendant's conduct. *See Dongguk Univ. v. Yale Univ.*, No. 08-cv-0441 (TLM), 2012 U.S. Dist. LEXIS 17085, at *23 (D. Conn. Feb. 10, 2012) ("To prevail on a

defamation claim a plaintiff must, as with any tort, establish a causal connection between the defendant's conduct and the plaintiff's alleged injury."); New York Pattern Jury Instructions – Civil, PJI 3:29B (2014), *comment* (a "[c]ausal connection between the defamatory statement and the harm claimed must be established for plaintiff to recover for actual harm[.]"); *Aronson v. Wiersma*, 483 N.E.2d 1138, 1140 (N.Y. 1985) (affirming dismissal of plaintiff's defamation claim because plaintiff was unable to demonstrate a "causal connection" between the loss of her job and the allegedly defamatory statements); *Wolf Street Supermarkets, Inc.*, 487 N.Y.S.2d at 449 (plaintiff alleging defamation could only recover for lost profits that were "proximately linked to the libel," not to other non-actionable acts by defendant).[8]

The evidence uncovered during discovery demonstrates that the emails did not cause Plaintiff to lose his jobs.  Therefore, summary judgment is warranted as to Plaintiff's defamation claim seeking to recover special damages.  *See Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017 (KMK), 2007 U.S. Dist. LEXIS 71246, at *52-55 (S.D.N.Y. Sept. 24, 2007) (summary judgment granted dismissing plaintiff's defamation claim because plaintiff produced no admissible evidence linking its loss of customers to defendant's defamatory statements about plaintiff's business); *see also Suckenik v. Levitt*, 576 N.Y.S.2d 258, 259 (N.Y. App. Div. 1991) ("the mere fact that plaintiff's client, the recipient of the [allegedly defamatory] letter, later terminated her

---

[8] This is true even for statements that are defamatory *per se*.  *See* Restatement 2d of Torts, § 622A, *comments a.-b.* (whether the statements are allegedly defamatory *per se* or not, "there can be no recover for the special harm unless the defamation is a legal cause of it," meaning the harm "would not have occurred without it."); *Cummins v. Suntrust Capital Mkts., Inc.,* 649 F. Supp. 2d 224 (S.D.N.Y. 2009) (applying Texas law similar to New York law) ("[E]ven if the statements have been determined to constitute defamation *per se*, proof of the actual injury suffered is required to recover special damages such as lost profits, incurred costs, lost time value, and future injury . . . .") (internal quotation marks omitted); *Meehan v. Snow*, 494 F. Supp. 690, 696 (S.D.N.Y. 1980) (plaintiff claiming loss of business as a result of slander *per se* was not entitled to recover actual compensatory damages because "he did not present any witnesses who could testify that they did not come to him because of the slander.").

relationship with plaintiff is insufficient proof of a causal connection between publication of the letter and any alleged loss by plaintiff"); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 60 (2d Cir. 2002) (limiting damages for slander *per se* claim to nominal amount because plaintiff's expert "assumed a causal connection [between the defamatory statements and the failure of plaintiff's business] that plaintiff failed to prove.").

On point is *Chamilia*, where plaintiff sought to recover special damages on defamation claim but "offered no admissible evidence of special damages." 2007 U.S. Dist. LEXIS 71246 at *55. The Court granted summary judgment in favor of defendant and rejected plaintiff's argument that it need not produce evidence of special damages to recover them if the statements at issue were defamatory *per se*. *Id*. at *48-49.

### 2.    Plaintiff Has No Admissible Evidence of General Damages

General damages include non-economic damages, such as the "impairment of [one's] reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Wolf Street Supermarkets, Inc.*, 487 N.Y.S.2d at 448. Although Plaintiff baldly alleges that the emails caused him to suffer substantial general damages, he has no evidence supporting such claims, and is therefore not entitled to recover damages based thereon. *See Fashion Boutique*, 314 F.3d at 59 (even where statements constitute defamation *per se*, actual damages "must be proven" through "competent evidence concerning the injury.") (internal quotation marks omitted).

Plaintiff alleges, without any admissible evidentiary support, that his general reputation in his industry was harmed by the emails. However, not only has Plaintiff failed to present evidence of his reputation before and after the emails, the undisputed evidence shows a lack of reputational injury. *See Massre v. Bibiyan*, 12 Civ. 6615 (KPF), 2014 U.S. Dist. LEXIS 82444, at *13-14 (S.D.N.Y. June 16, 2014) (finding no reputational injury where plaintiff "failed to establish that

[his] reputation was injured," as he had "failed to submit evidence regarding his reputation prior to the [allegedly defamatory *per se*] report being posted [and] his current reputation").

For example, Plaintiff has been terminated or forced to resign from at least six jobs.[9]  (R. 56.1 Statement ¶¶ 7-9.)  The terminations from Tullett and Cuttone were nothing out of the ordinary or unexpected based on Plaintiff's prior experience in the industry.[10]

In addition to the lack of proof of reputational injury, the emails sent by Defendant were only to a few individuals, and not sent to media, reporters, or to Plaintiff's customers.  Although Plaintiff stated that *he* later showed the emails to his clients and family members, Defendant cannot be held liable for any harm caused by Plaintiff's self-republishing.  *See Fashion Boutique*, 314 F.3d at 61 ("[I]t is well-established that damages must be based on the extent of the circulation based on initial publication and evidence of the circulation of the slander in republished form is inadmissible at trial.").

Again, the individuals who received the emails from Defendant did not believe them to be true and did not take action against him because of the emails.  (R. 56.1 Statement ¶¶ 13-20, 28-31, 34.)  Plaintiff's employment contract with Tullett began *after* Tullett received emails.  *See Metito (Overseas) Ltd.*, 2009 U.S. Dist. LEXIS 12590 at *44 (plaintiff "did not suffer any harm" as a result of defamatory statements because third party to whom they were published "outright rejected them as false."); *Allen v. CH Energy Group, Inc.*, 872 N.Y.S.2d 237, 239 (N.Y. App. Div.

---

[9] He was terminated at Credit Suisse, Bank of America, Cathay Financial, Tullett, and Cuttone. He was told not to come to work at ICAP and that his contract would not be renewed.  He "resigned" from Millenco when he became aware that his team was being let go for underperformance.  He was then unemployed for a year.  (R. 56.1 Statement ¶¶ 8-9.)

[10] Moreover, Plaintiff failed his Series 63 examination six out of seven times and failed his Level 3 exam three out of three times.  (R. 56.1 Statement ¶¶ 38-39.)  Passing a Series 63 exam is required in order for a registered representative to interact with clients.  Passing a Level 3 exam is required to become a Chartered Financial Analyst.

2009) (reversing jury verdict awarding plaintiff substantial compensatory damages for defamation *per se* because there was "no evidence that the statement was widely disseminated," "it appear[ed] to have been heard by a very small number of people," and there was "little proof" that the statement caused plaintiff to suffer any actual harm).

Plaintiff found employment at Cuttone shortly after being terminated from Tullett.  He found employment at Albert Fried shortly after being terminated at Cuttone.  Plaintiff's supervisor at Albert Fried, Anthony Katsingris, testified that he was not aware of any negative perception of Plaintiff's reputation in the industry and that, as far as he knew, Plaintiff had a good reputation. (R. 56.1 Statement ¶ 35.)  Mr. Katsingris also testified that he hired Plaintiff after Plaintiff showed him the emails.  (R. 56.1 Statement ¶ 34.)

It was also shown in discovery that Plaintiff's income in each of 2014 and 2015 was higher than the income he earned in any year in the period 2010-2013.  (R. 56.1 Statement ¶ 40.)  Further, since the commencement of the emails to Tullett, Plaintiff has appeared in media (video or in print) commenting on transactions no less than 300 times.  (R. 56.1 Statement ¶ 42.)

Plaintiff is not entitled to damages for any alleged reputational harm because he has not produced any evidence that the emails harmed his reputation in the industry.  *See Massre*, 2014 U.S. Dist. LEXIS 82444, at *14 (where plaintiff sought substantial compensatory damages due to reputational injury caused by defendant's defamatory report which was, unlike here, widely disseminated online, the court awarded him nothing because, even if the statements were defamatory *per se*, plaintiff "failed to submit evidence proving that his reputation had suffered negatively during the nine months when the [report] was available online.").

Plaintiff also alleges, without any concrete evidentiary support, that the emails caused him to suffer emotional stress.  However, Plaintiff admitted at his deposition that there are and were numerous causes of stress in his life unrelated to the emails.  Plaintiff testified that:  the nature of his job was stressful; his belief that his co-workers were hostile and conspiring against him was stressful; his overeating was stressful; his family life has caused him stress; and his failing all nine exams was stressful.  (R. 56.1 Statement ¶¶ 43-46.)

Months after the emails stopped and after this lawsuit was commenced with his first set of attorneys, Plaintiff went to a hospital alleging chest pains and dizziness caused by work-related stress.  The results of the cardiac stress test was normal.  (R. 56.1 Statement ¶ 48.)  Similarly, months after the emails stopped and after commencing this lawsuit and retaining attorneys, Plaintiff visited his doctor, Dr. Rastogi, claiming to be experiencing stress, including family-related stress.  Dr. Rastogi suggested that he see a therapist, Plaintiff never visited a therapist or psychiatrist.  (R. 56.1 Statement ¶ 50.)

As Plaintiff lacks concrete admissible evidentiary support for his stress-related damages claims, they too must be dismissed.  *See Meehan*, 494 F. Supp. at 696 (plaintiff claiming, without corroborating, evidentiary support, that he was so upset by slander *per se* that his health and work suffered from it was not entitled to recover substantial compensatory damages); *Heredia v. Taylor*, 300237/05, 2009 N.Y. Misc. LEXIS 2353, at *2 (N.Y. Civ. Ct. Mar. 6, 2009) (although plaintiff testified that defamation caused her to suffer "depression, sleepless nights and low self-esteem" and to be placed on a prescription for anti-depressants, the court awarded her no damages for such claims because "the plaintiff failed to proffer any evidence to corroborate this testimony.").

###     3.     If Not Dismissed, Defamation Damages Should Be Limited to a Nominal Amount

Given that Plaintiff has no admissible evidence that he suffered actual damages (special or general) as a result of the emails, his claims for such damages cannot survive summary judgment, and, at best, he should be able to seek nominal damages (assuming the statements are found to constitute defamation *per se*).[11]  *See MapInfo Corp. v. Spatial Re-Eng'g Consultants*, No. 02-CV-1008 (DRH), 2006 U.S. Dist. LEXIS 70408, at *43 (N.D.N.Y. Sept. 28, 2006) (where party opposing summary judgment presented "no evidence that [it] sustained any actual damages as a consequence of [the movant's] alleged defamatory [*per se*] statements," granting summary judgment on the opposing party's claim for actual damages and limiting it to seeking nominal damages); *but see Patton v. Egan*, 12 Civ. 2500 (LGS), 2014 U.S. Dist. LEXIS 132098, at *28 (S.D.N.Y. Sept. 18, 2014) (denying similar motion as "premature").

As opposed to the posture in *Patton*, granting summary judgment in this case on the issue of actual damages would not be premature.  Plaintiff has already been given the opportunity to present evidence of damages to the Court and failed to do so.  *See* Netburn, Order 2 (requiring Plaintiff to substantiate his claimed "lost business [which] has been a focal point in this litigation since the case was filed.").  Given the discrepancies between Plaintiff's interrogatory responses regarding his claimed damages and the evidence uncovered during discovery, Defendant sought clarification as to damages.  On said motion, the Court recognized:

---

[11] This does not mean that Plaintiff will necessarily be entitled to recover nominal damages for defamation *per se*.  *See Massre*, 2014 U.S. Dist. LEXIS at *12 (recognizing that "[t]he decision to award nominal damages [in defamation *per se* cases] is not, however, obligatory," and refusing to do so where, as here, the plaintiff produced no evidence of reputational injury); *Heredia*, 2009 N.Y. Misc. LEXIS 2353, at *6 (although finding defendant liable for slander per se, awarding plaintiff no damages as plaintiff did not prove special damages nor that her reputation was damaged in any manner).

> Shah has not identified with specificity the evidence he will use to prove his lost revenue.  The Court's cursory examination of the exhibits to this motion reveal that many of his claims are tenuous at best.  . . . .  It is hard to comprehend how Levy's alleged defamation could have lost the business of a client Shah did not yet have.  Other clients have denied in affidavits that they decreased their business with Shah because of the alleged defamation.

Netburn, Order 1.

The Court went on to require Plaintiff to "identify evidence he will use at trial, including documents, declarations, and depositions, of decreased revenue and unrealized financial commitments"; to "set forth in a sworn declaration his good faith basis for believing that each of the specific clients decreased their business or failed to engage in business as a result of the alleged defamation"; and to "identify with specificity the clients he intends to reply upon at trial to substantiate his claims for lost income."  Netburn, Order 1.

Plaintiff failed to provide the requested information.  In so failing, he demonstrated the falsity of his interrogatory responses, his inability to prove substantial damages, and wasted Defendant's and the Court's time.

Even with the foregoing opportunity, Plaintiff still has not come up with evidence of any actual damages to justify anything other than (at best) nominal damages.  As Plaintiff was already ordered to present his evidence of damages to the Court, in terms of the issue of damages, this case is procedurally on par with damages inquest cases such as *Orlowski v. Koroleski*, wherein the Court held "[s]ince the plaintiff failed to establish actual damages, her award of damages for slander *per se* should be limited to nominal damages of one dollar[.]"  651 N.Y.S.2d 137, 138 (N.Y. App. Div. 1996).

## IV.   PLAINTIFF HAS USED, AND SEEKS TO USE, THIS ACTION AS A WAY TO STRIKE AT HIS PERCEIVED ENEMIES

Plaintiff, while at ICAP, contacted management in an attempt to have Defendant fired from his job.  When that effort didn't succeed, Plaintiff contacted FINRA and the SEC alleging that

Defendant, Justin Lumiere and other co-workers were committing securities violations.  Plaintiff even contacted the FBI in an attempt to have criminal charges brought against his co-workers, including Defendant.

Defendant subsequently reacted by sending emails disparaging Plaintiff.[12]  Notably the emails stopped three years ago and Plaintiff was not injured by the sending of the emails.  The few who received them did not believe them and took no action against Plaintiff based on anything in them.

Prior to bringing this lawsuit, Plaintiff did not contact the person or persons he believed had sent the emails asking them to stop.  Rather, Plaintiff brought "a federal case" to obtain a major amount of money from Defendant, Justin Lumiere and Stefan Lumiere.[13]  Plaintiff went as far as to fabricate his damages.  His conduct being so egregious that Magistrate Judge Netburn had to sanction him.  Plaintiff's continuation of this lawsuit at this point is his effort to treat a jury trial as a lottery ticket in the hope that Plaintiff can "hit" Defendant with a large judgment.

## CONCLUSION

1.   Summary judgment should be granted to Defendant on Plaintiff's claim of tortious interference with contract as Defendant has shown that it was Plaintiff's conduct that caused his terminations, and Plaintiff has not presented concrete, admissible evidence from which a jury could rule in his favor.

2.   As to Plaintiff's claim of defamation, Plaintiff:

   i.    has not presented admissible evidence of substantial injury;

---

[12] Even so, the emails were sent only to a few, never to Plaintiff's clients, nor to the media nor publicized.

[13] Stefan Lumiere had no connection to this case, other than being Justin Lumiere's brother.  The Complaint is replete with Plaintiff's perceived grievances against Justin Lumiere, having nothing to do with the emails.

ii.     has not quantified the amount he is claiming for special damages;

iii.    has failed to present concrete evidence that any damage was caused by Defendant's

        conduct; and

iv.     has failed to present concrete evidence of substantial general damages, *i.e.*, he has not

        presented evidence of loss of reputation and he has not presented evidence that he is

        entitled to damages for alleged stress caused by Defendant's conduct.

At best, for Plaintiff, defamation damages should be limited on this motion to nominal

damages if Plaintiff could establish defamation *per se*.  Allowing Plaintiff to proceed to

trial in an attempt to seek a vindictive windfall (and treat a jury trial as a lottery ticket) is a

misuse of judicial resources.


Dated: New York, New York
       March 25, 2016

                              Respectfully submitted,
                              BRAGER EAGEL & SQUIRE, P.C.

                              /s/ *Lawrence P. Eagel*
                              Lawrence P. Eagel
                              Justin Kuehn
                              885 Third Avenue
                              New York, N.Y. 10022
                              (212) 308-5858

                                      -and-

                              Lester L. Levy, Sr.
                              Robert Plosky
                              WOLF POPPER LLP
                              845 Third Avenue
                              New York, N.Y. 10022
                              (212) 451-9606

                              *Co-Counsel for Defendant*


20